(C.D. 2255)

ALLIED DISPLAY MATERIALS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 16, 1961)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise in the case at bar consists of certain so-called garlands (plaintiff's exhibits 1 and 2) which were classified under paragraph 1518 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, with duty assessment at the rate of 35 per centum ad valorem as artificial stems and leaves in chief value of "other" materials. Plaintiff herein makes a number of claims: (1) That the garlands in question are classifiable by similitude, by virtue of paragraph 1559 of the Tariff Act of 1930, under paragraph 1413 of the tariff act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by T.D. 52462, as manufactures of paper; by similitude in use, pursuant to paragraph 1559, under paragraph 397 of the tariff act, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108, as articles or wares not specially provided for, composed wholly or in chief value of metal; under paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, supplemented by T.D. 52827, as nonenumerated manufactured articles.

The pertinent provisions of the tariff act and the applicable rates are as follows:

Paragraph 1413 of the Tariff Act of 1930, as modified by T.D. 52373 and T.D. 52462:

Manufactures of paper, or of which paper is the component material of chief value, not specially provided for * * *_____ 17½% ad val.

Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

   *       *       *       *       *       *       *

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:_____ 20% ad val.

Paragraph 1558 of the Tariff Act of 1930, as modified by T.D. 52739 and T.D. 52827:

Articles manufactured, in whole or in part, not specially provided for * * *_____ 10% ad val.

Paragraph 1559(a), as amended by Public Law 768, 89 Treas. Dec. 242, T.D. 53599:

PAR. 1559. (a)  Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

The merchandise before the court is limited to the so-called garlands covered by entry 702540 herein. The protest is abandoned as to all merchandise covered by entries 720367 and 728251 (R. 2).

The only testimony introduced was that of Mr. Edgar E. Moser, secretary-treasurer of the plaintiff concern, who stated that he had been active with that company since 1940, having been engaged during such period in the buying, creating, and selling of its products and in the general management of its affairs. He testified that Allied Display Materials, Inc., buys, creates, and makes decorative materials for store displays during the various seasons of the year, selling such products to department stores and specialty stores "all over the country" for occasions such as Valentine's Day and Easter, as well as for school and Christmas decorations (R. 8–9). Mr. Moser stated that he had seen merchandise such as that here imported used as garlanding from ceilings or posts, or as window displays in places such as department stores and specialty stores, and occasionally in clubs, restaurants, hotels, and banks (R. 20–21); that when so used as festooning, they are also used as structures from which to hang ornaments. As representative of the type of festooning to which the merchandise at bar

is put, there were received in evidence several photographs (plaintiff's collective illustrative exhibit 4 (R. 23), and plaintiff's collective illustrative exhibit 7 (R. 32)), showing the manner in which such garlands are employed for display purposes, hanging from ceilings and from posts in the interior of stores and in store windows.

Plaintiff's witness further testified that his company had been specializing for many years in providing stores with garlands of all types; that, prior to the time that vinyl garlands such as those here in issue were imported, many types of different garlands made out of paper (plaintiff's collective illustrative exhibit 5), or metal, mostly aluminum (plaintiff's collective illustrative exhibit 6), were used for decorative purposes in the same manner that the vinyl garlands are now used (R. 28).

Mr. Moser stated that his company sells certain garlands of tinsel wire (plaintiff's illustrative exhibit 8 (R. 35)) for festooning Christmas trees. He further testified that his company had handled or sold artificial fruits, flowers, and leaves all over the United States, stating, in this connection, that plaintiff's exhibit 1 representing the involved importation "is not a leaf" (R. 42).

There was received in evidence, as defendant's illustrative exhibit A, a small artificial Christmas tree, about 8 inches in height. On cross-examination, Mr. Moser identified the said sample as an artificial pine tree which, he stated, "seems to be made of the same basic material as the garland" (R. 44). The witness then stated that the branches on defendant's illustrative exhibit A are similar to the imported type of merchandise, as represented by plaintiff's exhibit 2 and plaintiff's exhibit 1, except for color (R. 47). It was stipulated between counsel for the respective parties that the merchandise here in issue "is made of material of which the component material of chief value is polyvinyl chloride." (R. 54.) The items under consideration are imported in 12-foot lengths.

In support of the collector's classification, the defendant directs our attention to the holding of this court in the case of *Decorative Plant Corp.* v. *United States*, 33 Cust. Ct. 451, Abstract 58565. An examination of a sample of the merchandise there in evidence indicated that it simulated in a manner a small pine tree with a trunk extending below the branches. The merchandise there involved, described as "Feather sprays for wreaths," was classified under paragraph 1518 of the Tariff Act of 1930, as modified, at the rate of 45 per centum ad valorem under the provision therein for "Artificial * * * stems * * *," in chief value of materials other than "yarns, threads, * * * or other synthetic textile." Plaintiff therein contended that the item under consideration was not an artificial stem but a planting spray in chief value of feathers, and claimed the merchandise properly dutiable under the provisions of said paragraph 1518, as amended,

for "Boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the feathers respecting which a rate of duty is specified" in the relevant paragraph at the rate of 20 per centum ad valorem. Concededly, the involved merchandise was in chief value of feathers. The question there for determination was whether or not the imported merchandise fell within the common meaning of the term artificial "stems." The substance of the testimony, as offered by plaintiff's witness, was that the imported merchandise was a "spray." After citing various dictionary definitions of the term "stems" and related terms, the court, in overruling the protest, at page 452, stated:

It would thus appear that in some particulars the words "spray" and "stem" are synonymous. It is fundamental in customs law, however, that when the classification of the collector is challenged, the dual burden of proving that such classification is incorrect and that its own claimed classification is correct, rests upon the importer. *Yardley & Co., Ltd., et al.* v. *United States*, 41 C.C.P.A. (Customs) 85, C.A.D. 533; *United States* v. *Gardel Industries*, 33 C.C.P.A. (Customs) 118, C.A.D. 325. The plaintiff in the present case, in our opinion, has failed to prove that the goods here imported are not artificial "stems," as classified. The fact that plaintiff's witness called the representative sample a "spray," does not establish that it is such within the common acceptation. * * *

As outlined in the *Decorative Plant Corp.* case, *supra*, the court therein considered various dictionary definitions as follows:

Funk & Wagnalls New Standard Dictionary of the English Language, 1942 edition, page 2376, defines a "stem" as follows:

stem, * * * 2. The relatively slender growth that supports the fruit, flower, or leaf of a plant and attaches it to the main stalk or to a branch or twig; a peduncle, pedicel or petiole; a fruit-, flower-, or leaf-stalk.

The same authority, at page 1822, gives the following definition of "peduncle":

peduncle, *n.* 1. *Bot.* The general stalk or support to an inflorescence, whether limited to a solitary flower or bearing a cluster.

The Encyclopedia Americana, 1953 edition, volume 25, page 614, defines "stem" as follows:

STEM, the main axis of a plant. Stems usually bear foliar organs, such as leaves, * * *.

\*      \*      \*      \*      \*      \*      \*

Botanists favor a classification, which deals with the character of foliar organs borne, thus: (1) leaf-bearing stems, generally most evident since they bear leaves, and consequently aerial and frequently branched; (2) flower-bearing stems; and (3) scale-bearing stems, * * *.

The Encyclopaedia Britannica, 1947 edition, volume 21, page 379, discusses the term in these words:

STEM, in popular language the stalk of a plant or trunk of a tree. In botany a stem may be defined as an axis bearing leaves. The stem with its leaves is known as the shoot. * * *

Collier's Encyclopedia, 1953 edition, volume 16, page 90, under the heading "PLANT ANATOMY," defines "stem" as follows:

Stem. The stem is that part of the plant axis bearing leaves and reproductive organs. * * *

A Dictionary of Flowering Plants and Ferns by J. C. Willis, 6th edition, page 623, explains a "stem" as follows:

> Stem, the leaf-bearing part of the pl.; stem and leaf should always be described together for the sake of accuracy and conciseness. * * *

Van Nostrand's Scientific Encyclopedia, 2d edition, 1947, page 1388, discusses a "stem" in this language:

> STEM. The stem of a plant is that part which bears the leaves and flowers and later fruits. Commonly it grows erect, lifting these various organs up above the ground. * * *

> *.      *      *      *      *      *      *

It is well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C.C.P.A. (Customs) 146, C.A.D. 75. We are aware of the fact that the involved merchandise was not classified as artificial trees, and we deem it unnecessary to enter into any discussion on this point as to which reference was made in the several briefs of the parties. In the case at bar, the merchandise was classified as artificial stems and leaves, chief value "other" materials. Samples are potent witnesses. *United States* v. *Bernard, Judae & Co.*, 18 C.C.P.A. (Customs) 68, T.D. 44029; *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995; *Marshall Field & Co.* v. *United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676. An examination of plaintiff's exhibits 1 and 2, representing the imported merchandise, shows that they simulate pine tree stems and leaves. Plaintiff's witness admitted, on cross-examination, that defendant's illustrative exhibit A, a small Christmas tree, simulates a pine tree and that the branches on defendant's illustrative exhibit A are similar to the imported type of merchandise (R. 48). Webster's New International Dictionary, second edition, unabridged, 1956, at page 1866, defines "pine" as follows:

> **pine,** *n.* * * * 1. Any tree of the genus *Pinus.* * * * the species are usually classified according to the number of secondary leaves, or "needles," in a sheath, and by the shape and position of the cones.

and, at page 1867, "pine needle" is defined as follows:

> **pine needle. a.** One of the slender needle-shaped *leaves* of a pine tree. [Italics ours.]

As was stated by this court, in the *Decorative Plant Corp.* case, *supra*:

> * * * An examination of the sample before us (plaintiff's exhibit 1) indicates that it simulates in a manner a small pine tree with a trunk extending below the branches. Whether the merchandise be considered as an artificial small tree or as an artificial branch from a tree, it falls, in our opinion, within the common meaning of the term artificial "stem," under the definitions heretofore quoted.

Plaintiff, as heretofore indicated, claims that the involved merchandise is properly classifiable, by similitude, under paragraph 1413 of the Tariff Act of 1930, as modified, as manufactures of paper, or by

similitude under paragraph 397 of said act, as modified, as articles or wares, not specially provided for, composed wholly or in chief value of metal, or under paragraph 1558 of the act, as modified, as nonenumerated manufactured articles. In our opinion, the involved merchandise is specifically provided for in paragraph 1518 of the tariff act, *supra*, and, accordingly, there is no necessity for us to resort to the similitude provisions of the tariff act, or to less specific provisions for nonenumerated manufactured articles, in order to determine the classification of the merchandise at bar. The plaintiff, in the present case, in our opinion, has failed to prove that the goods here imported are not artificial "stems," as classified, and has; therefore, failed in the burden imposed upon it under the statute. *United States* v. *Gardel Industries*, 33 C.C.P.A. (Customs) 118, C.A.D. 325. In *United States* v. *Hulsizer, Inc.*, 19 C.C.P.A. (Customs) 379, T.D. 45512, certain isolepsis grass, made from palm leaves in imitation of natural grass and used in window displays and other places where artificial flowers and grasses were used, was held properly classifiable at the rate of 60 per centum ad valorem under the provisions of paragraph 1518 of the Tariff Act of 1930 for "artificial or ornamental fruits, vegetables, grasses, * * * when composed wholly or in chief value of other materials and not specially provided for," rather than dutiable under paragraph 1537(a) of the said act as manufactures of palm leaf. In the case of *United States* v. *American Import Co.*, 26 C.C.P.A. (Customs) 283, C.A.D. 28, an importation of isolepsis grass was also under consideration. The court therein made reference to the merchandise involved in the *Hulsizer* case, *supra*, and, in describing the merchandise in question in the latter case, stated, at page 286, as follows:

The precise form in which the merchandise involved in the *Hulsizer* case, *supra*, (that is, whether in the form of single tufts or in the form of a garland made up of many tufts), is not stated in our decision. We there described it as "An importation of what is known as isolepsis grass (being a product made by fraying out the ends of palm leaves and used as imitation grass in window displays and other places where artificial flowers and grasses are used) * * *." In the instant case, as has been said, the importation seems to have been in garland form. In view of the language of paragraph 1518, *supra*, however, we do not regard the form as being of consequence here.

Similarly, in the case at bar, the fact that the imported merchandise is used as a garland for festooning purposes is not *per se* determinative of its classification.

Upon the record herein, including the samples in evidence, as well as the authorities heretofore cited, we hold the involved merchandise properly classifiable under paragraph 1518, *supra*, as amended, at the rate of 35 per centum ad valorem as artificial stems and leaves, in chief value of "other" materials. The protest claims are overruled. Judgment will be rendered accordingly.